In re William F. **HAYMAKER** and
Margaret L. **Haymaker**,
Movants/Debtors,

v.

**GREEN TREE CONSUMER DISCOUNT COMPANY, Respondent/Creditor.**

Bankruptcy No. 93–21190–BM.
Motion Nos. 93–1738M, 93–2145M.

United States Bankruptcy Court,
W.D. Pennsylvania.

April 7, 1994.

Patricia A. Brooks Brisini, Edward R. Schellhammer, Southern Alleghenys Legal Aid, Inc., Somerset, PA, for movants/debtors William F. and Margaret L. Haymaker.

Dennis M. Blackwell, Pittsburgh, PA, for respondent Green Tree Consumer Discount Co.

James R. Walsh, Spence, Custer, Saylor, Wolfe & Rose, Johnstown, PA, Chapter 7 Trustee.

### MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Green Tree Consumer Discount Company ("Green Tree") has brought a motion (at Motion No. 93–1738M) for permission to appraise debtors' mobile home. Debtors assert that Green Tree's request is "in bad faith" and insist that it is "estopped" from so requesting. They ask that a sanction in the amount of $300.00 be imposed upon Green Tree pursuant to Federal Rule of Civil Procedure 11. The court previously directed the mobile home be appraised and finds, for reasons set forth below, that it has a value of

$8,933.19. Additionally, the court finds no violation of Rule 9011.

Debtors have brought a motion (at Motion No. 93–2145M) for sanctions in which they allege that Green Tree violated the automatic stay by "badgering and harassing" them to pay their prepetition debt. Debtors remained in the mobile home *post*-petition and, in addition to being in default *pre*-petition[1], failed to make *post*-petition payments. Green Tree vigorously denies that it violated the automatic stay. Debtors' motion will be denied.

–I–

### FACTS

Debtors own and reside in a mobile home in which Green Tree has a perfected security interest.

Debtors filed a joint voluntary chapter 13 petition on April 5, 1993.

Their mobile home, which they have claimed as exempt and hope to redeem pursuant to 11 U.S.C. § 722, is listed as an asset of the bankruptcy estate with a value of $3,500.00.

Green Tree has been scheduled as having a claim in the amount of $5,076.58, part of which is secured and part of which is unsecured. According to debtors, the amount of Green Tree's secured claim is $3,500.00. The remaining $1,576.58, debtors contend, is unsecured.

Under their proposed chapter 13 plan, debtors would pay Green Tree the sum of $70.00 per month for a period of fifty months in satisfaction of its secured claim. No distribution to unsecured creditors was proposed. Green Tree objected to debtors' proposed plan on the ground that it failed, as required by 11 U.S.C. § 1325(a)(5)(B), to make payments equal to the value of the mobile home as of the effective date of the plan. By implication, Green Tree claimed that the value of the mobile home was in excess of $3,500.00.

At the section 341 meeting of creditors, debtors reiterated their intention of redeem-

---

**1.** Debtors' last payment was a one-half payment in November of 1992.

ing their mobile home pursuant to § 722 and asked that the case be converted to a chapter 7 proceeding. The case was converted on June 25, 1993. A chapter 7 trustee was appointed shortly thereafter.

On August 9, 1993, Green Tree submitted a motion for relief from stay in which it asserted that debtors had no equity in the mobile home. Paragraph 7 stated that the total amount of the debt was $5,903.57 and that the fair market value of the mobile home was approximately $3,500.00. Debtors denied in their response that the total amount due and owing was $5,903.57 and denied that the mobile home had a fair market value in excess of $3,500.00. In addition, debtors, in a display of creative pleading, brought a "counterclaim for redemption" in which they asserted that their mobile home had a fair market value of $3,500.00; and that the amount of Green Tree's secured claim was $3,500.00. They asked that Green Tree be directed to accept the sum of $3,500.00 as full satisfaction of its lien. Green Tree's motion for relief from stay was denied after a hearing on September 7, 1993. The court knew of no procedural basis for the "counterclaim in redemption" and lacked a substantive basis on which to value the mobile home and therefore declined to enter an order relating to redemption.

On September 23, 1993, Green Tree brought a motion for permission to enter debtors' mobile home and to appraise it in order to determine its fair market value. Debtors insisted in their response that Green Tree's motion was "in bad faith" and maintained that it was "estopped" from seeking to "reappraise" the mobile home at a higher value because it had represented on several prior occasions that the mobile home had a fair market value of only $3,500.00. Debtors, still intent upon redeeming their mobile home at a cost to their liking, asked that Green Tree be directed to deliver the certificate of title upon receipt of $3,500.00 and requested that a sanction of $300.00 be imposed upon Green Tree pursuant to Fed. R.Civ.P. 11.

Debtors were granted a discharge on October 14, 1993.

An order was issued on November 8, 1993 directing the parties to attempt to agree upon an appraiser. If they could not agree, the court advised that it would appoint one. Debtors' counsel subsequently informed the court that the parties could not agree on an appraiser and asked the court to appoint one.

On November 26, 1993, debtors brought a motion for sanctions against Green Tree for violating the automatic stay. According to debtors, Green Tree had "badgered and harassed" them by attempting to collect on the debt. Debtors seek an order directing Green Tree to desist in its actions to collect the debt. Also, debtors seek as sanctions an order directing Green Tree to accept the sum of $1,750.00 as satisfaction in full of its lien and an award of unspecified attorney's fees and costs. Green Tree has denied taking any actions that are in violation of the automatic stay.

A hearing was held on March 14, 1994 on Green Tree's motion for permission to appraise and on debtors' motion for sanctions for alleged violations of the automatic stay. The parties were given an opportunity to present evidence in support of their respective positions but chose not to do so. Instead, both attorneys merely offered argument. Also, the chapter 7 trustee informed the court at the hearing that the appraiser debtors had nominated had appraised the mobile home as having a value of $8,933.19.

The court offered the parties an opportunity to brief their respective positions. The parties respectfully declined the court's offer.

–II–

## ANALYSIS

### A. *Green Tree's Motion For Permission To Appraise*

Green Tree's request for permission to appraise the mobile home in order to determine the extent of its secured claim for purposes of 11 U.S.C. § 722 may at this date be moot as debtors' appraiser has completed the task and as the movant seems satisfied with same.

Debtors aver that they will not be bound by the appraisal of their appraiser and, in

addition, claim that Green Tree is estopped from seeking to "reappraise" the property in light of several alleged prior representations by Green Tree that it had a value of only $3,500.00. According to debtors, Green Tree represented at a hearing in state court on February 18, 1993 on its replevin action that the mobile home had a value of approximately $3,500.00. In addition, debtors point to a letter dated March 29, 1993 Green Tree's counsel had sent to their counsel, which stated in part as follows:

> Pursuant to your request of March 19, 1993, I have obtained the following information from my clients. According to the most recent NADA figures, the mobile home owned by the Haymakers is valued at $3,500.00....

Finally, debtors note that Green Tree asserted in paragraph 7 of its unsuccessful motion for relief from stay that the mobile home had a value of approximately $3,500.00.

Debtors further claim in their response that Green Tree's motion was "in bad faith" in light of the above prior representations and ask that a sanction in the amount of $300.00 be imposed upon Green Tree pursuant to Fed.R.Civ.P. 11.

### i) *Is Green Tree Estopped From Requesting Permission To Appraise Debtors' Mobile Home?*

Debtors' use of the word "estopped" is talismanic. They evidently believe that it is self-explanatory and therefore requires no elaboration.

It is not clear whether debtors are arguing that Green Tree is *judicially* estopped or *equitably* estopped from requesting permission to appraise their mobile home. These concepts are distinct and have different requirements.

■ Judicial estoppel is designed to prevent a party to litigation from playing fast and loose with courts. *Scarano v. Central R.R. Co.*, 203 F.2d 510, 512 (3d Cir.1953). Its purpose is to protect courts, not litigants. *See Fleck v. KDI Sylvan Pools*, 981 F.2d 107, 121–22 (3d Cir.1992).

Judicial estoppel prevents a party from asserting a position that is inconsistent with one it previously had asserted. *See Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 419 (3d Cir.), *cert. denied*, 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988). They may be "estopped" from asserting the position in a later proceeding. *See In re International Building Components*, 161 B.R. 764, 768 (Bankr.W.D.Pa. 1993).

■ The doctrine applies only if that party has *successfully* asserted the inconsistent position in the prior proceeding. The court must have been persuaded to accept its position in the prior proceeding. *See In re Cheripka*, 26 CBC 2d 385, 397–98, 1991 WL 276289 (3d Cir.1991).

■ None of Green Tree's representations identified by debtors gives rise to judicial estoppel in this instance.

The representation in the letter dated March 29, 1993 was made to debtors, not to the court. Judicial estoppel applies only to representations made to the court.

As for Green Tree's representations in the replevin action in state court and in its motion for relief from stay in this court that the mobile home had a value of approximately $3,500.00, Green Tree was not successful in either instance in persuading the courts to adopt its position. Moreover, debtors have not bothered to explain how these assertions are inconsistent with anything Green Tree asserts in the present motion. Green Tree has not made any representation in its motion concerning the value of the mobile home. It merely requests permission to conduct an appraisal in order to determine the true value.

■ Another type of estoppel upon which debtors may (or may not) be relying in opposing Green Tree's motion is *equitable* estoppel.

A party asserting equitable estoppel must establish that:

(1) a representation of fact was made to them;

(2) upon which they had a right to rely and did so rely; and

(3) denial of that representation by the party that made it would injure the relying party.

See *Wheeling–Pittsburgh Steel Corp. v. McCune,* 836 F.2d 153, 162–63 (3d Cir.1987).

■ None of the representations identified by debtors gives rise to equitable estoppel in this instance. The representations made in the replevin action in state court and in Green Tree's motion in this court for relief from stay were made to the court, not to debtors. Although the representation in the letter of March 29, 1993 was made to debtors, they did not reasonably rely upon it to their detriment.

## ii) *Rule 11 Sanctions.*

In their response to Green Tree's motion, debtors assert that it "has acted in bad faith" in view of Green Tree's prior representations as to the value of the mobile home. They ask that, as a sanction pursuant to Fed. R.Civ.P. 11, Green Tree be required to accept the sum of $1,750.00 as payment in full of its secured claim and to pay debtors the sum of $300.00 for counsel fees.

Federal Rule of Bankruptcy Procedure 9011 provides in relevant part as follows:

(a) **SIGNATURE.** Every petition, pleading, motion and other paper served or filed in a case under the Code on behalf of a party represented by an attorney ... shall be signed by at least one attorney of record in the attorney's individual name.... A party who is not represented by an attorney shall sign all papers.... The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, or to cause unnecessary delay or needless increase in the cost of litigation or administration of the case.... If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose

on the party who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

Rule 9011 "tracks Fed.R.Civ.P. 11". *Cinema Service Corp. v. Edbee Corp.,* 774 F.2d 584, 585 (3d Cir.1985).

■ The primary purpose of Fed.R.Civ.P. 11 is to deter abuses of the judicial process. *Doering v. Union County Board of Chosen Freeholders,* 857 F.2d 191, 194 (3d Cir.1988). Rule 9011 is designed to discourage pleadings that are "frivolous, legally unreasonable, or without factual foundation". *Lieb v. Topstone Industries,* 788 F.2d 151, 157 (3d Cir. 1986).

■ The test for Rule 9011 is an objective one of reasonableness under the circumstances. *Dura Systems, Inc. v. Rothbury Investments, Ltd.,* 886 F.2d 551 (3d Cir. 1989). The required certification constitutes a warrant that the document is not being used for an improper purpose, such as to harass, to cause undue delay, or to needlessly increase the cost of litigation. *See Lieb,* 788 F.2d at 157.

As was the case with debtors' insistence that Green Tree is estopped from requesting permission to appraise their mobile home, the court has been left to fend for itself in determining whether Green Tree has violated Rule 9011 in bringing its motion. As no party has asked that the above standards be employed to measure debtors or their counsel's courtroom and pleading activities, no discussion of same will occur in this Memorandum Opinion.

Debtors have intimated only that Green Tree's motion was brought "in bad faith" in light of the above representations discussed previously. The court has labored mightily and is unable to conclude that the motion was brought "in bad faith" and thus amounts to an abuse of process in violation of Rule 9011.

■ To the contrary, Green Tree's motion was entirely reasonable under the circum-

stances of this case. At all times it was known that Green Tree's basis for fair market value came from a NADA book. Depending on whose story you find more credible, Green Tree either had been denied access to the property or took no opportunity to value this specific mobile home. The NADA value gave Green Tree a reasonable basis for concluding that the fair market value of a similarly equipped mobile home was approximately $3,500.00. Green Tree had no basis, however, for placing a specific value on this specific item.

Debtors declared their intention to redeem the mobile home pursuant to 11 U.S.C. § 722.[2] In addition, debtors stated in their schedules that Green Tree's claim was secured only in the amount of $3,500.00 (because the mobile home has a value of only $3,500.00) and stated that the remainder of its claim is unsecured.

Green Tree reasonably requested permission to appraise the mobile home in order to determine the amount of its secured claim for purposes of section 722.

### iii) *Value Of The Mobile Home.*

In light of debtors' declared intention to redeem the mobile home and the related dispute concerning the extent to which Green Tree's claim is secured for purposes of redemption, a determination at this time as to the value of the mobile home is in order.

■ The value of the mobile home is $8,933.19, not $3,500.00 as debtors insist.

At the hearing held on March 14, 1994, the chapter 7 trustee informed the court that the appraiser debtors had nominated to appraise the mobile home had arrived at such a value. No other value was offered by any other party. Green Tree has not contested same nor offered any conflicting value. Debtors will not be heard to deny the value arrived at by their own appraiser and shall be bound thereby. To the contrary, any other argument would be disingenuous and appear to be an effort to get something for nothing.

### B. *Debtor's Motion For Sanctions For Violations Of Automatic Stay*

11 U.S.C. § 362 provides in pertinent part as follows:

(a) Except as provided in subsection (b) of this section, a petition filed under section … 302 … of this title … operates as a stay, applicable to all entities, of— …

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title. …

11 U.S.C. § 362(a)(6).

Debtors insist that Green Tree has violated the above provision. According to debtors, Green Tree badgered and harassed them "by attempting to collect the debt in numerous proposed guises". They claim that Green Tree sent them a monthly statement in November of 1993 which states that their account is in arrears; that a pre-printed flyer offering to refinance their debt was included with the statement; and that they had received at least two follow-up telephone calls from Green Tree asking if debtors wished to refinance the debt.

■ The burden of establishing that Green Tree engaged in conduct that was in violation of § 362(a)(6) undoubtedly lies with debtors.

■ At the hearing scheduled for March 14, 1994 on their motion, debtors offered no *admissible* evidence that Green Tree committed any of the acts of which it had been accused. Although certain documents were attached to debtors' motion, they do not constitute evidence in and of themselves and may not be considered. No testimony was offered concerning the exhibits. Indignant statements by debtors' counsel accusing Green Tree of various misdeeds are not admissible evidence that Green Tree violated the automatic stay.

---

**2.** 11 U.S.C. § 722 provides in relevant part as follows:

An individual debtor may … redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title, … by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien.

Even if it be assumed that Green Tree did indeed take the actions of which debtors accuse it, debtors' strident assertion that Green Tree thereby violated the automatic stay must be rejected for at least two reasons.

■ Requests by a creditor for payment of a debt are *not* in violation of § 362(a)(6) without a showing of harassment or coercion by the creditor. *See Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81, 86 (3d Cir.1988). The respite provided debtors by the automatic stay is not from communications from a creditor, but from threats of immediate action by the creditor. *Id.*

■ Green Tree's lien against the property was not extinguished when debtors were granted a discharge in October of 1993. The actions supposedly taken by Green Tree in this instance constitute nothing more than an invitation to debtors to refinance their debt to Green Tree on terms less onerous to debtors than the terms in effect prior to the filing of the bankruptcy petition. Nothing in those actions even remotely smacks of harassment or coercion by Green Tree.

Debtors' insistence that Green Tree violated the automatic stay must be rejected for the additional reason that the actions in this instance were taken *after* the automatic stay had terminated as it applied to debtors.

Section 362 of the Code provides in relevant part as follows:

(c) Except as provided in subsections (d), (e), and (f) of this section—

(1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate; and

(2) the stay of any other act under subsection (a) of this section continues until the earliest of—

(A) the time the case is closed;

(B) the time the case is dismissed; or

(C) if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied.

11 U.S.C. § 362(c).

■ The rule set forth in § 362(c) may be generalized as follows: the automatic stay continues, in the case of an act against property of the estate, until the property no longer is property of the estate or, in the case of other acts under § 362(a), until the earliest of the closing of the case, the dismissal of the case, or the granting or denial of a discharge. *See Browning v. Navarro*, 743 F.2d 1069, 1083 (5th Cir.1984).

■ Section 362(c)(1) does not apply to this case. The acts allegedly taken by Green Tree were directed to debtors personally, not against property of the bankruptcy estate. The entreaties to refinance were directed at debtors and not estate property. Accordingly, there was no violation of the automatic stay imposed by § 362(c)(1).

The automatic stay as it pertains to debtors personally terminated on October 14, 1993, when they were granted a discharge by this court. The actions by Green Tree about which debtors vociferously have complained were not taken until November of 1993, several weeks *after* debtors had been granted a discharge. Green Tree's actions obviously were not in violation of the automatic stay as said stay had previously terminated by operation of law. Additionally, they were not an action to collect a debt discharged in bankruptcy as the lien against the mobile home passed through the proceedings and survived the discharge.